(23 App. Div. 43.)

### LANDRIGAN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 7, 1897.)

STREET RAILROADS—PERSON ON TRACK.

Where a passenger alights from a street car, and, passing behind it, is immediately struck by a car coming in the opposite direction, just as he steps on the latter's track, he does not show absence of contributory negligence by the mere fact that he "looked up" before stepping on the track, and perceived no car.

Appeal from Kings county court.

Action by James Landrigan against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles A. Collin, for appellant.
Samuel D. Morris, for respondent.

WILLARD BARTLETT, J.   I think that the defendant's motion for a new trial in this case ought to have been granted on the ground that the verdict was against the evidence, so far as the question of the

plaintiff's contributory negligence was concerned.   The proof on this subject is found exclusively in the testimony of the plaintiff himself. He was a passenger upon a street surface railway car going up Broadway, in the city of Brooklyn, towards East New York.   The car stopped at the intersection of McDougal street with Broadway.   The plaintiff alighted, and went around the rear of the car towards the further sidewalk of Broadway, in order to reach which it was necessary for him to pass over the down track of the railroad line.   After he got upon this down track, he was struck by the corner of the dashboard of a car coming in the direction opposite to that pursued by the car which he had just left, and was knocked over into the gutter.   Before he stepped on the rail he says he looked up, to see if any car was coming, and saw no car.   Broadway is straight at that point, and there was nothing in the way to prevent him from seeing the approaching car.   Nevertheless he swears positively that he did not see it until after he stepped on the first rail of the down track, when he perceived it about 12 feet away.   At that instant a fireman on the opposite side of the street gave a warning cry, whereupon the plaintiff backed off the track, but not quickly enough to avoid injury.   It was with considerable difficulty that counsel succeeded in getting the plaintiff to give any estimate of the distance which he looked up the track when he failed to see the approaching car.   I quote the testimony on that subject:

"Q. How far up the street did you look before you stepped on the rail?  A. I looked up, and seen no car.  Q. How far did you look?  A. I looked up. Q. How far up the street?  A. I just looked up like that to see if any car was coming.  Q. Did you look up twenty feet?  Can't you say whether you looked twenty feet?  A. I looked up.  Q. Did you look up twenty feet?  A. Yes, sir.  Q. Did you look up thirty feet?  A. About thirty feet, I guess.  That is a straight street there.  I think Broadway is straight at that point.  Q. Nothing in the way to prevent you seeing that car was there?  Was there anything between you and the car?  A. I don't think so.  I didn't see when I looked up; that is sure.  Q. Didn't hear any car coming?  A. I didn't hear any bell rung.  It was about eight o'clock in the morning.  I didn't see a wagon on the street.  I saw no other cars except these two.  This car I got off hadn't started yet.  By the Court:  Q. How did you look up the street,— which side of the car that you got off of?  A. Just as I got around the end, I looked up the other track.  Q. How far away was the car then?  A. I didn't see the car then."

It is true that the plaintiff's account of the accident, considered as a whole, does tend to establish negligence in the operation of the mail car, at least in respect to the speed at which it approached the crossing where the car which he had just left was standing.   It seems to me, however, that he failed to sustain the burden which the law placed upon him of proving affirmatively that the injuries which he sustained were not due to his own imprudent conduct or lack of care.   Under the circumstances, as he narrates them, it is impossible to avoid the conclusion that, if he had looked up the unobstructed street to the extent and with the vigilance demanded by the exercise or ordinary prudence, he would certainly have perceived the car with which he collided a moment later.   In such situation as he occupied, it is not only necessary for a traveler to turn his eyes in the direction from which danger may be expected, but he must actively exercise his power of vision, and not step blindly into peril.   I recognize to its fullest extent

the settled rule that the absence of contributory negligence may be affirmatively established by circumstances no less than by direct proof, and that, if different conclusions can be drawn from circumstances, the question is one for the jury. Chisholm v. State, 141 N. Y. 246, 36 N. E. 184. I am satisfied, however, that the circumstances of the accident, as narrated by the plaintiff himself in this case, fairly warrant only one conclusion in respect to his conduct, and that is that he would have escaped injury if he had exercised the ordinary care of a prudent person.

If this view is correct, the defendant should be awarded a new trial; but this must be conditioned upon the payment of costs, as is customary when a verdict is set aside on the ground that it is against the evidence. Bailey v. Park, 5 Hun, 41. All concur.