surance Co., 10 App. Div. 235, 41 N. Y. Supp. 964; Bank v. Yandes, 44 Hun, 55; Roberts v. Van Horne (Sup.; Oct. 8, 1897) 47 N. Y. Supp. 448. The order should be affirmed, with $10 costs and disbursements. Order affirmed, with $10 costs and disbursements. All concur. ·

(25 App. Div. 309.)

### COMBY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

RAILROADS—INJURIES TO PERSON AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff, with a companion, after passing a gate house situated 17 feet from certain railroad tracks, had an uninterrupted view westwardly along the tracks for 400 feet. As plaintiff was nearing the crossing, a freight train was approaching from the east, and she waited for it to pass; and, as soon as it uncovered the track, she started to cross, and was struck by a passenger train coming from the west. Both she and her companion testified that they had no particular recollection of looking up and down the tracks that evening, but knew that they did so, because they frequently crossed the tracks at that place, and always looked to see if any train was coming. *Held*, that plaintiff was guilty of contributory negligence. ·

Appeal from trial term, Wayne county.

Action by Mary Jane Comby against the New York Central & Hudson River Railroad Company. Judgment of nonsuit. From an order denying a motion for new trial, plaintiff appeals. Affirmed.

Action to recover for injuries alleged to have been sustained at the highway crossing of the defendant's road at Savannah, N. Y., on May 15, 1895, at about 7:45 p. m. At the close of the plaintiff's evidence the defendant moved for a nonsuit on two grounds: "(1) That she has failed to show negligence on the part of the defendant; (2) that she has failed to show that she herself was free from negligence contributing to this accident." The plaintiff asked to have both questions submitted to the jury. Her requests were denied, and an exception taken, and the motion for a nonsuit was granted.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

E. W. Hamm, for appellant.
Albert H. Harris, for respondent.

HARDIN, P. J. Plaintiff, on the evening of May 15, 1895, left her residence, which is situated on the west side of Main street, in the village of Savannah, and started northerly, along Main street, in company with Mrs. Sedore, intending to reach the Methodist church, and attend a prayer meeting. As they passed up Main street, towards the tracks of the defendant, they came to a gate house or flagman's shanty which was situated about 17 feet south of track No. 1, being the passenger track used by trains passing eastwardly. The gate house entirely shuts off the west view of track No. 1, "and this continues until you pass by the building, and the building is 5 feet 10 inches wide. Immediately after leaving the gate house going north you begin to see the tracks. The gate is 3 feet 5 inches north of the gate house. At a point on the sidewalk just half way between the gate house and the gate itself * * * you can see the clear southerly track or passenger track

*   *   * up for a distance of 466 feet without any obstruction whatever. You can see a point 20 feet west of the north mail-catch post." As the plaintiff was nearing the crossing a freight train was approaching the crossing from the east, and she waited for it to pass, and as soon as it uncovered the track she started northward, and was struck by an east-bound passenger train, coming at the rate of from 40 to 45 miles an hour. She testifies, viz.:

"When we stopped we were a few steps north of the flag house. Mrs. Sedore was with me. When the train struck me I was between the sidewalk and the track, or gate house and track. The gate there,—we call it the gate— The gates were up. I had not stepped over on the track yet. The train came along, and hit me there,—something about the engine or tender. Of course, I can't tell what hit, and next I was on the ground, of course, going with it."

Her hand was bruised and she was otherwise injured. At the time of the accident the plaintiff was familiar with the crossing. She had lived just south of the crossing some 30 years, and all her communications with the village, including attendance upon church, were had by passing over this crossing. The accident occurred about 7:45 p. m., and the witnesses say the evening was "cloudy, misty, dusky."

In the plaintiff's direct examination she stated that she looked and listened while passing from the shanty towards the track. In the course of her cross-examination the following occurred:

"Q. I ask you if you say you looked on that occasion because you always looked. A. I don't know but that was it. Q. What I am after is whether you have any present distinct recollection of what you did on that occasion, or whether you simply say you looked then because you always look when you are near a crossing. A. We always look for a train when we are near a crossing, to go over it. Q. That is the reason you say you looked on that occasion, is it? A. I say I think it is. Q. And that is the only reason, is it? A. No; looking for a train, of course. Q. Is that the only reason? A. There isn't any reason, only we looked to see if there was a train coming, if the road was clear. Q. Is there any reason that you say that, other than because you always looked? A. I don't know; I always looked, of course. Q. Is that the reason you say you looked on that occasion? A. Most assuredly; it must have been. Q. You must have looked because you always look? A. Because we wouldn't want to go and get run over, would we? Q. There is nothing more to it than that? A. Not that I know of. Q. You always look when you are near a railroad crossing? A. Yes, sir. Q. So you think you must have looked on that occasion because you always looked? A. I must; I know I looked. Certainly, I know I looked. Q. Because you always looked? A. I don't know what answer else I can give you. I have no recollection of what I did on this night, more than on any other particular night. I stood there south of the crossing while the train was going by. I always look for a train, and that leads me to say I looked for a coming train on this occasion. There is nothing else that makes me say so. Q. Then, after you had left that place south of the flagman's house, and gone to the north of it, what did you do? A. We looked again. Q. Did you stop? A. We were going slow. We didn't stop,—stand still. We were just taking steps along. We' didn't stop,—stand still. We did not stop from the time we were standing south of the flagman's shanty until we were struck. We were going leisurely along; just an ordinary walk."

In describing the manner of the collision the witness said:

"I knew when it struck me, and I was going with the train: I didn't know what it was that struck me. Q. Do you know, as a matter of fact, you walked right into the side of the tender of the locomotive? A. I think the

matter of fact is the tender walked into us. I was not struck by the front of the locomotive. I was not on the track. Something along the side of the tender or cars hit my left arm, and tore my clothes all off of me. Mrs. Sedore, who is here, says she pulled me out from under the wheels. I did not see that train or hear it at all. I did not know there was any such train coming. The first thing I knew was I was rolling across the street, with the train across the road. I just saw the locomotive when it passed, and it was something beyond that that hit me; must be on the tender, between the tender and the locomotive. I don't know what struck me; something that stuck out. I saw the front of the engine go by just like a flash. It must have been something between it that hit me,—got my clothes all grease; so it must have been something about the engine or tender. It wasn't but a few steps that I took after I looked west before I was struck. It couldn't have taken me more than five or ten seconds to get where we were. I can't tell how many steps I took. I did not look west more than once after I left that shanty. I looked up to the west, and then I turned immediately, and looked towards the east. I looked to the west, and then to the east."

### Mrs. Sedore, who was with the plaintiff, testified, viz.:

"After we started up we went between the gate house and the track, and I kind of halted, and looked up west, and listened to see if we could see or hear anything coming—any other train—before we started for the track. Q. Did you do anything more? A. Not until after we started on. Q. Before looking east? A. We looked up east. I looked west first, and heard nothing, and cast my eye east before we started on. Q. Then did you start up again? A. Start up again, and, just as we got between the flag house, the gate house, and the track, kind of halted and kind of listened, and I looked west again to see, because I always do,—looked west, and then east,—before we started on. * * * As we started on, just after we started up, this train came from the west,—this passenger train. I did not see it, or hear it, until it just went right by us. At that time I could not say just exactly how many steps we had taken from the time we stopped and looked. We had not taken but a few. * * * The train or something hit us, and knocked us both down, and as I laid there I saw the wheels go along, and it seemed as though it came up so still, and I kind of gathered myself. I know I fell, and hit me,—something did, I could not say what it was,—and knocked me down, and as I gathered myself up I looked to see where she was, and she was going this fashion."

### This witness further says:

"We looked west. We were between the flagman's shanty,—we call it the 'gate house,'—just coming between there and the track, when we looked west. I cannot tell any nearer than that. We were closer to the track than we were back to the flagman's house. When we looked or halted for breath, we were between the shanty and the track. I think we were nearest the flagman's house; I can't tell exactly, but between the track and the flagman's. That is as near as I can get to it."

This witness states that there was no noise there,—nothing to distract their attention. She was then asked:

"Q. The first thing you knew you walked right into the side of this locomotive? A. That came right into us. Q. If you had not been there, it would not have struck you? A. Certainly not. We would not have walked right into it, I don't think. Mrs. Comby was on my right. She had taken one step, one foot, further ahead than I. That is why it caught hold of her, and knocked us both down. She did not have hold of me; she did not have my arm."

### This witness also testified, viz.:

"I always look and listen before I come over the tracks. I never fail to. There was no more reason why I should do it on that night than any other night, that I know of. I am speaking from my general recollection. Q. When you say that you always look and listen, and therefore you must have looked

and must have listened that night— A. Certainly I did. Q. That is the pró-cess of reasoning you go through. You don't single out this night any more than any other particular night to testify to it? A. I don't know as I do. I look every time we go by; always like to know whether there was a train coming or going. Q. You have got no different or other recollection about this night than any other night when you crossed those .tracks? A. None particularly, as I know of. I never saw this train at all, nor heard it, until it whizzed right by."

Considering that the view between the shanty and the track, a distance of some 17 feet, was unobstructed westwardly for 466 feet, in connection with the testimony given by the plaintiff and by her companion, we are of the opinion that the trial judge was warranted in holding, as matter of law, that the evidence did not establish that the plaintiff was free from contributory negligence at the time she received the injuries complained of. The plaintiff failed to ex-ercise the care which a prudent person should have exercised under the circumstances surrounding her at the time she approached the highway crossing of the defendant. Smith v. Railroad Co. (Sup.) 17 N. Y. Supp. 400, affirmed Id., 137 N. Y. 562, 33 N. E. 338; Lan-drigan v. Railroad Co., 23 App. Div. 43, 48 N. Y. Supp. 454.

The facts disclosed by the evidence in this case differ from the facts disclosed in Seeley v. Railroad Co., 8 App. Div. 403, 40 N. Y. Supp. 866. That case was said to be upon the border line "which separates questions of fact from questions of law"; and it was rested largely upon the ground that the party injured and her companion "looked in each direction before going upon the track upon which the accident happened." Appellant calls our attention to Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425. While it was said in that case that the plaintiff is not bound to see, it was also said that he "is bound to make all reasonable efforts to see that a careful, prudent man would make in like circumstances." The evidence before us does not indicate that the plaintiff used that care and caution which, under the circumstances, she ought to have used to avoid being injured by the approaching train from the west. Our attention is invited to the case of Miller v. Railroad Co., 82 Hun, 164, 31 N. Y. Supp. 317, affirmed Id., 146 N. Y. 367, 41 N. E. 90. In that case it was said: "Here there is a conflict as to some of the material facts relating to the question of the deceased's free-dom from negligence;" and, upon looking into the facts in that case, they are found to differ very essentially from the facts disclosed by the case now in hand. We recognize the rule that, where there is a nonsuit, the plaintiff is entitled to the most favorable construction of the evidence, and to the most favorable inferences that may be drawn therefrom, and we have applied that rule in considering the evidence in this case; and we are of the opinion, after due consid-eration of the rule applied to the evidence before us, that the plain-tiff has failed to establish her freedom from contributory negli-gence. The train which was approaching the crossing was the usual train passing that station at 7:43, and on this occasion was a few minutes late, and was coming at apparently its usual speed of 40 to 45 miles an hour; and with the sound created by such a train, if the plaintiff had been alert and using that care and caution which

persons approaching a known place of danger ought to have exercised, she would not have been injured. We think the trial judge committed no error in granting a nonsuit.

Order affirmed, with costs, and judgment ordered for the defendant, with costs. All concur.