MARY A. O'REILLY, as Administratrix, etc., of PETER F. O'REILLY, Deceased, Respondent, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant.

*Negligence — proof of freedom from contributory negligence — disregard of a rule requiring street cars to stop at a crossing.*

In an action to recover damages resulting from the death of the plaintiff's intestate, who was struck and killed by one of the defendant's street cars, it is not enough that the facts proven permit the inference that the intestate was free from contributory negligence, but such inference must be the only one that can fairly and reasonably be drawn from the facts. Such an inference cannot be drawn from the presumption that one will exercise care and prudence in regard to his own life and safety.

When, in such a case, it appears that the accident occurred at a street intersection where the defendant's street railroad was crossed at right angles by another street railroad, the fact that the car which struck the intestate did not come to a full stop before crossing the tracks of the other street railroad company, in obedience to a rule promulgated by the defendant, is not available to the plaintiff upon the question of the intestate's freedom from contributory negligence.

APPEAL by the defendant, The Brooklyn Heights Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 1st day of May, 1902, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 10th day of May, 1902, denying the defendant's motion for a new trial made upon the minutes.

*I. R. Oeland* and *George D. Yeomans*, for the appellant.

*Henry Escher, Jr.* [*George F. Elliott* with him on the brief], for the respondent.

JENKS, J.:

There is no evidence which directly establishes or tends to establish, or permits the inference that the intestate stopped or looked or listened before he walked across the rails of the defendant. The learned counsel for the respondent is frank to admit that there is no "affirmative proof" that the intestate did any of these things, but he insists that due care on the part of the intestate may be

established by inferences. It is not enough that the facts proven permit an inference, but it is held that the inference sought must be the only one which can fairly and reasonably be drawn from these facts. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.) And naturally so, else the jury would be free for guess work. A contention of the learned counsel for the respondent will serve to illustrate. He says that the distance which the intestate had to travel before he reached the track was nine feet six inches, and that he undoubtedly looked, saw the car and proceeded. Now, as I have said, there is not a particle of direct testimony that he looked. Of course he could have looked while traveling that distance, but because he could have done so it cannot legally be inferred that he did so. Nor can the inference of freedom from contributory negligence be drawn from the presumption that one will exercise care and prudence in regard to his own life and safety. (*Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420.) The sole witness of the accident, called by the plaintiff, says that he saw the intestate; he himself saw the car from fifty to seventy-five feet away; that it was lighted and traveling rapidly, with the noise usual to the locomotion of such cars. He also says that the intestate was crossing the street, coming towards the rails, was between the track and the curb, and then he states: " He went to one side, all of a sudden he disappeared."

In order to reach the crosswalk, where the deceased walked, the car must cross the tracks of another surface railroad, which ran along Franklin avenue and bisected the rails of the defendant at right angles. The plaintiff offered in evidence a rule of the defendant to the effect that cars crossing tracks must come to a full stop, and must not proceed until after a signal from the conductor. There is testimony from which the jury might infer that the car in question did not stop in obedience to that rule. And it is insisted that the intestate had a right to rely upon such obedience, and that this tends to establish his freedom from contributory negligence. It must be remembered that there was no obligation of law, statute or ordinance upon the defendant to stop its car at the bisection of Franklin avenue and Bergen street. The law only required the motorman to have his car under reasonable control while approaching the cross street, in view of the probabilities of persons or

vehicles attempting to pass over the tracks at that point, and in furtherance of the relative equal rights of car, vehicle or traveler.

In *McGrath* v. *N. Y. C. & H. R. R. R. Co.* (59 N. Y. 468) the court, per ANDREWS, J., say: "The law does not make it the duty of a railroad company to place a flagman at street crossings to warn travelers. (*Beisiegel's Case,** 40 N. Y. 9.) It may do so for that purpose, or for the protection of its trains or passengers. If it does so, the duty is voluntarily assumed, and may be abandoned at any time; and a mere failure to perform a self-imposed duty is not, as was said by WILLES, J., in *Skelton* v. *London and Northwestern Railway Company* (L. R. 2 C. P. 631), actionable negligence." In the case cited (*Skelton* v. *London & Northwestern Railway Company, supra*), WILLES, J., says: "Actionable negligence must consist in the breach of some duty. Here, it is not pretended that the defendants had acted improperly in the management of the trains, and the gates fulfilled all the requirements of the statute, so that the plaintiff has to rely on the self-imposed duty, as it is called, or precaution, as I should call it, of keeping the gates shut when trains were passing. First it is said that that was evidence that the crossing was a dangerous one; but though it might be *prima facie* evidence of that, if it did not appear otherwise what the nature of the crossing really was, it is of no value when the other evidence, as here, shews what the real nature of the crossing was, and that there was no unusual danger. The precaution taken, therefore, must have been wholly voluntary, and it would be much to be deplored if the defendants' liability were increased by their taking additional precautions, whether from motives of humanity or discretion. Such, however, is not the case. If a person undertakes to perform a voluntary act he is liable if he performs it improperly, but not if he neglects to perform it. Such is the result of the decision in the case of *Coggs* v. *Bernard* (1 Sm. L. C. [6th ed.] 177)." (See, too, 1 Bev. Neg. [2d ed.] 155.) I have not overlooked the discussion as to the exact point decided by EARL, J., upon the second appeal of *McGrath's Case* (63 N. Y. 524), but that learned judge in *Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.* (82 id. 424, 427) says: "Besides, it was not the duty of the defendant to station or keep a flag-

---

* *Beisiegel* v. *New York Central.*

man at that crossing; and so far as the trial judge in his charge instructed the jury that they could base a finding of negligence against the defendant on the absence of the flagman, he was clearly in error. (*McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y. 468; S. C., 63 id. 522.)" It is true that in *Dolan* v. *Delaware & Hudson Canal Co.* (71 N. Y. 288) the court held that although, irrespective of an ordinance, negligence cannot be imputed upon an omission to keep a flagman at a crossing, yet where a flagman has been uniformly stationed there, his neglect to give warning or his absenting himself from his post is imputable to the company. But it would seem that the rule relied upon in this case was not made to protect travelers who might attempt to pass along crosswalks at a street corner and over the tracks of the defendant, but for the purpose of preventing collisions between cars of the defendant and those of another company, whose lines run along Franklin avenue. It was, of course, true that obedience to the rule would incidentally serve to protect a traveler attempting to cross at a point beyond and adjacent to the rails of the other company, as would the stop of an approaching car for any reason; but, as I have said, such was not the purpose of the rule. I think that the mere violation of the rule, as presented by the record, does not avail the plaintiff upon the question of her proof of absence of contributory negligence. Her learned counsel says: "The motorman was chargeable with knowledge of this rule; the deceased undoubtedly knew it." But it does not appear that the intestate knew it, nor are there any facts to warrant the inference that he knew or naturally would have known it. Even if it were shown that the intestate knew the rule, are there any facts to establish or to warrant the inference that the intestate even knew that there were any tracks upon Franklin avenue, so that the rule was in force at this place? In *Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.* (*supra*) the court, per EARL, J., say: "The plaintiff's conduct was in no way influenced by the absence of a flagman, as he did not know that one had usually been kept at that point."

In fine, the record does not show that the deceased took any precautions whatever, and it does tend to show that if he had done so, he would have seen the approaching car, and escaped it, for the witness Shanley saw it rapidly approaching, lighted by electricity, and

with the usual rumble of such a vehicle. I think that the plaintiff did not meet the obligation to show the absence of contributory negligence of her intestate. (*Barker* v. *Savage*, 45 N. Y. 191; *McClain* v. *Brooklyn City R. R. Co.*, 116 id. 459; *Landrigan* v. *Brooklyn Heights R. R. Co.*, 23 App. Div. 43, 45.) Even where the evidence upon such question points neither way, the plaintiff fails.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

GOODRICH, P. J., and WOODWARD, J., concurred; HIRSCHBERG and HOOKER, JJ., concurred solely upon the first ground stated in the opinion.

Judgment and order reversed and new trial granted, costs to abide the event.

