MARGARET E. HUFF, as Administratrix, etc., of JAMES D. HUFF, Deceased, Respondent, v. THE AMERICAN FIRE ENGINE COMPANY, Appellant.

*Negligence — death from being caught by a revolving shaft — a finding that the cloth-ing of the deceased caught upon a set screw — when not sustained by the evidence — absence of contributory negligence, not established.*

In an action to recover damages resulting from the death of the plaintiff's intestate, it appeared that the deceased was employed in the defendant's foundry, and that in one of the rooms of such foundry was a revolving shaft four and one-half feet from the floor composed of two pieces joined together by means of collars fastened to the ends of the two pieces of the shaft with set screws; that on the day of the accident the deceased and the defendant's foreman were working in the room; that when last seen by the foreman the deceased was standing close by him; that almost immediately thereafter the foreman heard a noise, and, upon looking around, saw the deceased upon the revolving shaft, at a place at least seven feet from where the deceased was standing when the foreman last saw him.

So far as appeared the deceased had no duty to perform which required him to go in the vicinity of the revolving shaft. What led him to do so or how he got there was not shown by the evidence.

When the deceased was taken from the shaft, his clothing, with the exception of his shoes and stockings, had been entirely stripped off and was wound tightly about the shaft covering the coupling and the set screw. His body was not, however, near the set screw or coupling nor was the set screw embedded in

any part of the clothing nor was any part of the clothing wound about the head of the screw.

The case was submitted to the jury under a charge that the defendant was not liable unless the deceased became caught by coming into contact with the set screw.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be reversed, for the reasons, *first,* that the evidence did not justify a finding that the deceased was caught by the set screw, and, *second,* because no evidence had been given tending to prove that the deceased was free from contributory negligence.

APPEAL by the defendant, The American Fire Engine Company, from an order of the Supreme Court, made at the Seneca Trial Term and entered in the office of the clerk of the county of Seneca on the 12th day of March, 1903, denying the defendant's motion to set aside the verdict of a jury for $2,000 theretofore rendered in favor of the plaintiff, and for a new trial made upon the minutes.

The action was commenced on the 9th day of October, 1902, to recover the damages sustained by the death of James D. Huff, plaintiff's husband, alleged to have been caused through the negligence of the defendant and without any contributory negligence on the part of the deceased.

*Charles A. Hawley,* for the appellant.

*Frederick L. Manning,* for the respondent.

McLENNAN, P. J. :

The material facts of this case are not in dispute. The defendant was engaged in manufacturing steam fire engines in the village of Seneca Falls, N. Y., and operating a foundry in connection therewith. So far as important to note, the foundry building in which the accident complained of happened was a two-story structure, the ground floor of which was used as a molding room. Directly above it was a " scaffold room," so called, eighteen feet eight inches long and sixteen feet wide. The walls were made of brick, and the floor of iron. It was well lighted and was reached from the molding room by means of a stairway at the south end. At the extreme north end and midway between the sides there was a cupola or furnace for melting iron. It was a circular brick structure four feet in diameter and extended from the ground floor up through the scaffold room and roof of the building.

A door in the cupola, directly in front, opened into the scaffold room, the bottom of which was on a level with the floor. In this room iron, coal and coke were deposited and made ready to be used in charging the cupola, it all being weighed or measured, the coal and coke placed in separate piles along the west side of the room and the iron on the east side. When the cupola was to be filled a fire was started at the bottom and the iron, coal and coke were then shoveled or thrown into it through the door from the scaffold in proper proportions. A shaft two inches in diameter extended along the west side of the scaffold room, about eight inches from the wall and four and one-half feet from the floor, supported and held in place by posts or braces called " hangers " resting on the floor. The shaft was made of two pieces joined together by putting a hub or collar on each of the ends to be united. On the end of each hub was a flange which projected out from the main part of the hub about one inch. Next to the flange there was a set screw which extended through the hub making it rigid upon the shaft. The head of the set screw was seven-eighths of an inch square and projected outward exactly the same distance as did the flange. When the hubs were thus attached the two ends of the shaft were connected by bolting the two flanges solidly together. By means of a belt extending from a revolving shaft in the molding room, up through the floor of the scaffold room and onto a pulley upon the shaft in question it was caused to revolve, making about 135 revolutions per minute, and attached to it was a fan or blower connected with the cupola, which furnished a draft and caused the fire to burn more readily. The shaft throughout its entire length was uncovered and in plain view from all parts of the scaffold room.

On the 22d day of January, 1902, plaintiff's intestate, a common laborer, sixty-five years of age, was engaged in the scaffold room assisting a Mr. Sisson, defendant's foreman, in charging the cupola. The deceased had never worked in that room before, but had been employed by the defendant in other capacities from the fifteenth day of December previous. The fire having been started at the bottom of the cupola, the deceased, under the foreman's direction, had shoveled the proper amount of coal and coke into the furnace ; had set down his shovel near the pile of coke on the west side of the room ; had gone to the easterly side and was handing iron to Sisson,

who in turn threw it into the cupola. The iron was wet or covered with snow, so that when it came in contact with the fire it caused steam to form, which escaped through the cupola door into the scaffold room. Sufficient iron having been thrown into the furnace, the foreman closed the door, stood close in front of it, and was peeking through a crack to see how the fire was burning. At that time, and when last seen by the foreman previous to the accident, the deceased was standing close behind him. Almost immediately thereafter the foreman heard a noise, and upon looking around saw the deceased upon the revolving shaft, which was at least seven feet from where the deceased was standing when the foreman last saw him. So far as appears, the deceased had no duty to perform which would lead him to go to the west side of the room, or in the vicinity of the revolving shaft. What led him to do so or how he got there is in no manner indicated by the evidence. The shaft was immediately stopped. The deceased was found upon it about midway between the coupling and the pulley, they being several feet apart, in a reclining position, his legs between the shaft and the wall of the building, his head toward the pulley, and the rest of his body extending toward the coupling; his clothing, with the exception of his shoes and stockings, was entirely stripped off and wound tightly about the shaft, from the pulley to and covering the coupling and the set screw above described. Fellow-workmen removed the plaintiff's intestate from the shaft, and from the injuries sustained he died soon after.

In the complaint it is alleged that the deceased, " while in and about his work, was caught by said projecting set screw in a portion of his clothing and was whirled around by the rapid revolution of said shaft and thereby injured and killed," and it is alleged that the defendant was guilty of negligence because it failed to guard such set screw, as required by the provisions of section 81 of the Labor Law. (Laws of 1897, chap. 415, as amd. by Laws of 1899, chap. 192.) The case was tried solely upon that theory.

The only questions submitted to the jury were, in effect: *First,* was the deceased caught by coming in contact with the set screw; *second,* if so, was the defendant guilty of negligence in not guarding it or permitting it to remain in the condition in which it was; *third,* did the deceased come in contact with the set screw through

his own negligence; *fourth,* the amount of damage sustained because of his death.

The learned trial court charged the jury: "It is necessary, in order to recover, that the plaintiff shall satisfy you that the deceased was killed by the negligence of the defendant in failing to guard this set screw. Of course, if the deceased was killed not by the set screw, but by being caught by some other portion of this shaft, then the statute that defendant must properly guard set screws would have no application in this case. Then the case would simply turn upon whether the defendant was negligent in any other way. But this is not pointed out. The only claim made here is that this accident occurred through an unguarded set screw, so your attention must be confined entirely to that. Unless the plaintiff shows that the deceased was killed through being caught by this set screw, and that it was negligence upon the part of the defendant to leave it unguarded, there can be no recovery by her, and your verdict must be for the defendant."

The jury by its verdict must necessarily have answered each of the questions submitted favorably to the plaintiff. The correctness of such findings is challenged by the appellant, and it is urged that there is absolutely no evidence which tends to support the proposition that the deceased was caught by the set screw, or that it had anything to do with throwing him upon the revolving shaft.

We think the appellant's contention in that regard should prevail. As we have seen, no witness saw the deceased when he was caught by the shaft. When he was discovered his body was not touching or near the set screw or coupling. There is not a word of evidence which indicates that the clothing of the deceased first became fastened to the set screw, or that it was fastened to it at all. There is nothing to show that it commenced to wind about the shaft at the point where the set screw was; that the screw was imbedded in any part of the clothing, or that any part of any garment was wound about the head of the screw, and there was nothing about the position of the body which throws any light upon the question as to how or what part of the clothing first became caught upon the shaft. It is a matter of common knowledge that the revolving shaft where perfectly smooth might have caught the clothing of the deceased and caused the injury complained of. How, then, can it be said, upon

the evidence, that it was not caught at such place, but was caught by the screw? We think such conclusion must be the result of pure speculation. It should be remembered in this connection that the set screw in question was guarded to some extent by the flange, although perhaps the jury would have been justified in finding that the defendant had not fully complied with section 81 of the Labor Law in that regard. Is it not quite as likely that the clothing of the deceased was caught by the nuts or heads on the bolts which fastened the two flanges together as by the set screw? Yet that was not the question submitted to the jury. They were instructed by the learned trial court that in order to enable the plaintiff to recover they must find that the set screw caused the accident, and they evidently so found. We think there is no evidence which tends to support that conclusion, and for that reason the order must be reversed.

Neither is there any evidence which tends to prove that plaintiff's intestate was free from contributory negligence. No one attempts to say that the deceased used proper care, or any care, as he went from the point where he was standing in front of the cupola door to the revolving shaft, a distance of seven or eight feet, even if we may assume that it was not negligent for him to go there, when he had no business connected with his employment which at the time called him to that part of the room. No one attempts to say what the deceased did when he reached the shaft, or why he went where it was. Did he attempt to sit on the revolving shaft or handle it? Did he carelessly walk too close to it, or did he fall against it? An answer to either question must be the result of guess work and speculation.

In *O'Reilly* v. *Brooklyn Heights R. R. Co.* (82 App. Div. 492), recently decided by the Appellate Division, second department, it was said by Mr. Justice JENKS: "It is not enough that the facts proven permit an inference, but it is held that the inference sought must be the only one which can fairly and reasonably be drawn from these facts. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.) And naturally so, else the jury would be free for guess work."

The rule thus stated aptly illustrates respondent's contention in the case at bar. The jury was permitted to guess that the plaintiff's

intestate used reasonable care and prudence in going in proximity to the revolving shaft, and that he was caught without any fault or negligence on his part, without any evidence to support that proposition. Whether or not he was free from negligence the evidence fails to disclose, and for that reason the order appealed from should be revers

All concurred.

Order reversed and motion for new trial granted, with costs to appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.