MATTEO LAVENIA, Claimant, *v.* STATE OF NEW YORK.

Claim No. 16629.

(State of New York, Court of Claims, September, 1920.)

**Personal injuries — evidence insufficient to establish liability of the state — National Guard — Laws of 1920, chap. 814.**

Where upon the hearing of a claim filed pursuant to chapter 814 of the Laws of 1920, for personal injuries alleged to have been sustained by the infant claimant at the hands of a member of the National Guard of the state while engaged in a sham battle which took place in a public park in the city of Albany the claimant attempts to establish by circumstantial evidence the fact that, the state militia was at fault, but the facts shown are insufficient to justify a finding that the bullet which injured the claimant was fired by any one connected with the state militia, the claim will be dismissed.

CLAIM for damages for personal injuries.

Louis Silberman, for claimant.

Glenn A. Frank, deputy attorney-general, for state.

MORSCHAUSER, J.   The claimant filed a claim against the state alleging that he sustained injuries and was damaged in the sum of $7,000. The claim was filed pursuant to chapter 814 of the Laws of 1920, which reads as follows:

"AN ACT to confer jurisdiction on the court of claims to hear, audit and determine the claims of Frank DiMarco, an infant, Frances DiMarco, an infant, and Matteo Lavenia, all of Albany, New York, against the state of New York for personal injuries alleged to have been sustained by them at the hands of a member of the National Guard of the state of New York, in or in the immediate vicinity of Lincoln park, near Swan street, in the city of Albany and state of New York, and to render judgment therefor.

" *The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

" SECTION 1. Jurisdiction is hereby conferred upon the court of claims to hear, audit and determine an alleged claim of Frank DiMarco, an infant, Frances DiMarco, an infant, and Matteo Lavenia, all of the city of Albany, New York, against the state, on account of the following alleged facts: That the claimants on or about the twenty-first day of April, nineteen hundred and nineteen, while lawfully in Lincoln park, near Swan street, in the city of Albany, New York, witnessing a sham battle which was being conducted there, in which members of the National Guard of the state of New York took part, under the command of its officers, received permanent injuries by being shot without cause or provocation, while

Court of Claims, September, 1920.    [Vol. 113.

such guardsman was in the actual performance of his duty as a member of such guard; or under the direction and orders of his superior officers, using for such purpose rifles under the charge and control of officers of said National Guard and one or more live cartridges causing the injuries to claimants; and if the court finds that such injuries were so sustained, and that the claimants were free from contributory negligence, damages therefor shall constitute a legal and valid claim against the state, and the court may award to and render judgment for the claimants for such sums as may be just and equitable.

" § 2. The state hereby consents to have its liability on such claims determined notwithstanding the failure of said Frank DiMarco, Frances DiMarco and Matteo Lavenia to file their notice of intention to file such claim, and claim within the time prescribed by law, provided that such claim be filed with the attorney-general and court of claims within six months after the taking effect of this act.

" § 3. This act shall take effect immediately."

During the last world war the United States government, in order to obtain funds to carry on the war, issued and sold Liberty Bonds and to aid the government many patriotic citizens took an active part in getting persons to purchase these bonds and for the purpose of arousing enthusiasm and promoting the sale of these bonds arranged with the state authorities and federal authorities to have a sham battle, which finally took place at Lincoln Park, near Swan street, in the city of Albany, N. Y., on the 21st day of April, 1919, at 4 p. m. of that day. The fact that the sham battle was to take place at that time was extensively advertised in the daily papers and the public was invited to witness it and at the sham battle a large number of persons were present to view the battle.

Misc.]          Court of Claims, September, 1920.

The New York State Militia, which took part in the sham battle, was composed of four companies, namely, A, B, C and D, commanded by Col. Charles E. Walsh and Lieutenants Norris and Schimpf. Six machine guns and two whippet tanks furnished by the federal government also took part in this battle. The State Militia at the time was using Springfield rifles, all firing blank cartridges. The State Militia, composed of infantrymen, and the tanks together were to attack the machine guns and drive them out of their nests. In the battle many blank cartridges were fired by the State Militia, the tanks and the machine guns. The machine guns and the tanks were under the control and direction of United States Army officers and the State Militia under the control and direction of the New York National Guard.

Lincoln Park is bounded by four streets in the city of Albany and is about 600 feet in width and 1,200 feet in length. The surface of the ground of the park is somewhat lower on the eastern side than the surface of the streets around it and forms, as the witnesses say, an amphitheater. Swan street, located on the south of the park, runs at right angles to the park and terminates at the park. The machine guns were placed at or near Swan street, on the southerly side of the park. The tanks and infantrymen were on the opposite side, approaching the machine guns and were firing and shooting cartridges at the time. The claimant was standing on the south side of the park, near Swan street, viewing the sham battle. He had his hand on the shoulders or head of one Frank DiMarco, a small boy, who stood facing the park, and directly behind the claimant was one Frances DiMarco. While the three persons named were standing in this position, a nickel steel jacketed bullet was fired from some rifle or gun located northerly of the claimant,

Court of ·Claims, September, 1920.     [Vol. 113.

the bullet being shot in a southerly direction. This bullet passed through the head of the child, Frank DiMarco, and then entered the right wrist or forearm of the claimant and also penetrated some part of the body of Frances DiMarco, who was in the rear of the claimant. The next morning, upon an examination being made of the ground near where the claimant stood at the time of the accident, there was found a . pool of blood and a bullet which was of the weight, size, kind and caliber used in the model of the Springfield rifles that the State Militia was using in this sham battle. This bullet calipered 307 to 310 thousandths, weighed 148 grains, was nickel-jacketed and made to fit a United States cartridge, 1906, model.

When the State Militia assembled at the State Armory, before the sham battle, to receive from the officers the rifles and ammunition that were to be used, a very rigid and thorough examination was made by the officers of the State Militia. The cartridges were examined and the rifles to be used were opened and inspected, and the clothing of the men was examined. The cartridges to be used on that occasion were ordered to be blank cartridges, from the ammunition factory, and all the boxes containing the cartridges and the contents were examined by the officers, and the officers in charge of the sham battle all testified that nothing but blank cartridges was issued or in use at the time of the sham battle by the State Militia. The cartridges used by the infantrymen, composing the State Militia, at that time were all in clips holding five cartridges each. One clip was placed in a rifle in loading and five shots were fired from the rifle in succession, before reloading. The whippet tanks had machine guns and one of the tanks was firing at the time of the accident to the claimant, and the testimony of the officer operating the tank at the time was to the

effect that the bullets used in the machine guns when they were firing bullets were of the same size, style, weight and caliber as used in Springfield rifles. The officer in charge of the tank, Capt. C. H. Barnard, testified that there was in use at that time in the tank a Marlin machine gun, the cartridges used by the gun being similar to those used in the United States magazine rifle thirty caliber, sometimes miscalled "Springfield rifle."

It also appeared from the testimony of this witness that no inspection or examination of the tanks or the machine guns used therein, or of the blank cartridges to be fired was made, and that instead of using clips of five cartridges, which was customary, when bullets were being fired, the cartridges that were used in this machine gun at the time had to be placed in the gun by hand and fired one at a time, for the reason that the machine gun would not load and shoot automatically when bullets were not used, as the force that is exerted in ejecting a bullet out of a machine gun causes a rebound which reloads the gun, no rebound taking place with blank cartridges, and in shooting blank cartridges without bullets of some kind, they had to be inserted and shot one at a time. It also appeared from the testimony that the cartridges used by the infantrymen had wax bullets which allowed the guns to operate automatically for the purpose of reloading, until the clip in the gun was empty, and that these wax bullets were harmless as they melted with the heat of the explosive when firing. It also was shown that the machine guns, tanks and infantrymen were all firing rapidly and that in the machine guns, the loading and shooting were done by the operator of the gun as rapidly as he could work the gun, and necessarily in the operation of this machine gun, the operator being required to work quickly, did not have any opportunity

to make any inspection of the cartridges inserted by him.

Primarily, the state is not liable for negligence and it is a well-established principle of law that the state in consequence of its sovereignty is immune from prosecution in its courts and from liability, except in those cases where it has specifically waived such immunity and assumed liability. *Smith* v. *State of New York,* 227 N. Y. 405; *Lewis* v. *State of New York,* 96 id. 71.

The state of New York, in this case, by legislative enactment, has waived immunity and assumed all liability, if the claimant should establish that the accident to him was caused by the negligence of the State Militia, or a member of the National Guard of the state of New York, that took part in the sham battle.

The claimant asserts that the fact that the bullet found was in looks, weight and caliber the same as is used in the Springfield rifles, and that the State Militia was using such rifles at the time of the accident, that the bullet came from the direction of the location of the State Militia at the time of the shooting, established the fact or justified the inference that it was fired by some militiaman using a Springfield rifle, and as at that time no others, as appears by the testimony, were using Springfield rifles the inference should be drawn that the circumstances established the fact that the State Militia was negligent and was the cause of the accident.

We do not think that the claimant has established by proof the fact that the State Militia was in any way negligent. The officers of the State Militia, who testified on behalf of the state, were all men of large experience in the military service of the state. They appeared thoroughly familiar with all duties connected with the State Militia and all testified that a thorough inspection and examination were made of the cartridges

and rifles and the clothing of the men at the State Armory, immediately before the sham battle. The circumstances, as established by the testimony, would as well justify the inference that the accident was caused by the negligence of the officers in charge of the whippet tank that was firing at the time, as both the tank and the infantrymen were shooting in the same direction.

We think the claimant has failed to establish by a fair preponderance of evidence that the State Militia was negligent or was the cause of the injury to him. This the claimant must do before he can recover damages under chapter 814 of the Laws of 1920.

The state under this law does not assume liability or waive immunity if the accident was caused by the machine gun in the whippet tank. This tank was under the authority and control of United States army officers and was in no way connected with or under the control or authority of the State Militia.

Upon all the evidence as presented by the claimant, we believe that the claimant has not proven sufficient facts to justify a finding that the bullet which injured him was fired by any one connected with the State Militia. The claimant attempted to establish the fact that the State Militia was at fault by circumstantial evidence.

It is a well-established rule of law that " While a material fact may be established by circumstantial evidence, still, to do so the circumstances must be such as to fairly and reasonably lead to the conclusion sought to be established, and to fairly and reasonably exclude any other hypothesis." *Lopez* v. *Campbell*, 163 N. Y. 347.

In order to prove a fact by circumstances there should be positive proof of the facts from which the inference or conclusion is drawn.

Court of Claims, September, 1920.    [Vol. 113.

The circumstances themselves must be shown and not left to rest in conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts. *Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90; *People* v. *Harris,* 136 id. 429; *O'Reilly* v. *Brooklyn Heights R. R. Co.,* 82 App. Div. 492.

For these reasons, the claim of the claimant should be dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.